IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIANNE WALLA, <br><br>  Plaintiff, <br><br> v. <br><br> MERCK & CO., INC., a New Jersey corporation, WALGREEN COMPANY, an Illinois corporation, and K MART CORPORATION OF ILLINOIS, an Illinois corporation, <br><br>  Defendants. | Case No. 07 C 1864 <br><br> JURY TRIAL DEMANDED ON ALL COUNTS <br><br> JUDGE CASTILLO <br><br> MAGISTRATE JUDGE GERALDINE SOAT BROWN |

### NOTICE OF REMOVAL

PLEASE TAKE NOTICE that defendant Merck & Co, Inc. ("Merck"), through undersigned counsel, hereby removes the state court action entitled *Dianne Walla v. Merck & Co., Inc., Walgreen Company, and K Mart Corporation of Illinois*, Civil Action No. 2007 L 3232 (filed in the Circuit Court of Cook County in the State of Illinois), pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

  1.  This action involves allegations regarding the prescription medication FOSAMAX®. On August 16, 2006, the Judicial Panel on Multidistrict Litigation ("MDL Panel") issued an order pursuant to its authority under 28 U.S.C. § 1407, in which the MDL Panel created MDL No. 1789 and transferred 18 FOSAMAX® products liability cases to the United States District Court for the Southern District of New York (Keenan, J.) for coordinated pretrial proceedings. *In re Fosamax Prods. Liab. Litig.*, 444 F. Supp. 2d 1347 (J.P.M.L. 2006). As of this date, the MDL Panel has issued 17 Conditional Transfer Orders requiring the transfer of an additional 50 actions to MDL 1789, where a total of 68 cases are now pending. Merck will

2578565                                           1



seek the transfer of this action to MDL-1789, and will therefore provide the MDL Panel notice of this action pursuant to the "tag-along" procedure contained in the MDL Rules.

2. On or about March 28, 2007, plaintiff commenced this action against Merck and other defendants by filing a complaint in the Circuit Court of Cook County, in the State of Illinois, bearing Number 2007 L 3232. A copy of the Complaint is attached hereto as Exhibit 1.

3. In this action, plaintiff alleges that she has suffered serious and permanent injuries as a result of taking FOSAMAX. (Comp. at ¶¶ 37-38, 50). Plaintiff's key contention is that FOSAMAX is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use. (*Id.* at ¶¶ 15, 17-18, 49, 59).

4. Merck has not been served with the Complaint, but Merck filed an answer to the Complaint in the Circuit Court of Cook County on April 4, 2007. Accordingly, this Notice of Removal is being timely filed pursuant to 28 U.S.C. § 1446(b).

5. As described below, the remaining defendants are fraudulently joined in this action. Accordingly, they need not consent in this removal. *See Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 369 (7th Cir. 1993); *Siderits v. State of Indiana*, 830 F. Supp. 1156, 1160 (N.D. Ind. 1993); *Hess v. Great Atlantic & Pacific Tea Co., Inc.*, 520 F. Supp. 373, 375-76 (N.D. Ill. 1981).

6. No further proceedings have been had in the state court action.

7. As more fully set forth below, this case is properly removed to this Court pursuant to 28 U.S.C. §§ 1332 and 1441, because it is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest and is between citizens of different states.

## *REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 and 1441.*

### Amount In Controversy

8.  It is apparent from the face of the Complaint that plaintiff seeks recovery of an amount in excess of $75,000, exclusive of costs and interest. The plaintiff in this case brings eight different claims against Merck and other defendants. The plaintiff's key allegation is that FOSAMAX is defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with its use. (Comp. at ¶¶ 15, 17-18, 49, 59). Plaintiff alleges that as a result of taking FOSAMAX, she suffered serious severe and permanent injuries, as well as mental anguish. (*Id.* at ¶¶ 37-38). Specifically, plaintiff claims that she

> sustained damage to her jaw, including osteonecrosis of the jaw. In addition, Plaintiff required and will continue to require healthcare and services. Plaintiff has incurred and will continue to incur medical and related expenses. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

(*Id.* at ¶ 50). Nowhere in the Complaint does plaintiff limit the amount in controversy to less than $75,000. Rather, for each of her eight claims, plaintiff seeks actual damages, punitive damages, attorneys' fees, costs, and any other available relief. (*Id.* at Global Prayer for Relief).

9.  There can be no doubt that the jurisdictional minimum has been satisfied here. While there is a dearth of prior cases specifically involving osteonecrosis of the jaw – a situation that may be due to the fact that osteonecrosis of the jaw is a rare disorder and cases alleging liability against pharmaceutical manufacturers for allegedly causing it had, prior to very recently, been non-existent – there are:

- numerous reported cases in which jaw or similar facial injury led to jury or court awards far in excess of $75,000. *See, e.g., Howie v. Walsh*, 609 S.E.2d 249 (N.C. App. 2005) (addressing jury award of $300,000 against dentist who fractured patient's jaw during procedure); *Becker v. Woods*, 806 N.Y.S.2d 704 (N.Y. App. Div. 2005) (affirming jury award of $840,000 in damages where dental patient suffered from permanent paresthesia); *Preston v. Dupont*, 35 P.3d 433 (Colo. 2001) (addressing jury award of more than $250,000 for damage to alveolar nerve in jaw); *Bowers v. Liuzza*, 769 So.2d 88 (La. App.), *writ. denied*, 776 So.2d 468 (La. 2000) (finding that minimum adequate damage award for nerve damage in jaw was an amount that exceeded $175,000); *Becker v. Halliday*, 554 N.W. 2d 67 (Mich. App. 1996) (jury award of $200,000 in damages, where syringe lodged in upper jaw); *Herpin v. Witherspoon*, 664 So.2d 515 (La. App. 1995) (plaintiff entitled to receive more than $75,000 as a result of temporomandibular joint (TMJ) dysfunction); *Washburn v. Holbrook*, 806 P.2d 702 (Or. App. 1991) (affirming jury finding of $400,000 in damages as a result of damage to jaw during root canal); and

- numerous prior cases that reveal that potential awards based on osteonecrosis or avascular necrosis of the hip, knee, or other joint, exceed the $75,000 jurisdictional amount. *See, e.g., Barbee v. United States*, 2005 W.L. 3336504, at *1-2 (W.D. Wis. 2006) (finding that plaintiff suffered nearly $700,000 in damages for hip injuries that included avascular necrosis); *Shaver v. United States*, 319 F. Supp. 2d 649 (M.D.N.C. 2004) (awarding more than $75,000 in damages for osteonecrosis in knee caused by automobile accident); *Piselli v. 75th Street Medical*, 808 A.2d 508 (Md. 2002) (addressing jury award of $410,000 for medical malpractice that led to avascular necrosis of the hip); *Collier v. Cawthon*, 570 S.E.2d 53 (Ga. App. 2002) (affirming jury award of $170,000 for avascular necrosis of the hip).

### **Complete Diversity Of Citizenship**

10. There is complete diversity between plaintiff, a citizen of Illinois, and Merck, a citizen of New Jersey. Diane Walla admits that she is a citizen and resident of the state of Illinois. (Comp. at ¶ 2).

11. Merck is, and was at the time plaintiff commenced this action, a corporation organized under the laws of the State of New Jersey with its principal place of business at One Merck Drive, White House Station, New Jersey. Therefore, Merck is a citizen of the State of New Jersey for purposes of determining diversity. 28 U.S.C. § 1332(c)(1); *see also* Comp. at ¶ 3.

## The Pharmacy Defendants Are Fraudulently Joined

12. The pharmacy defendants, Walgreen Company ("Walgreens") and K Mart Corporation of Illinois ("K Mart") have been fraudulently joined to defeat diversity jurisdiction. Accordingly, their citizenship should be ignored for purposes of determining diversity. *See, e.g., Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *Schwartz v. State Farm Mutual Automobile Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999); *Hoosier Energy Rural Electric Co-op., Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1315 (7th Cir. 1994).

13. In the Seventh Circuit, "[d]iversity jurisdiction cannot be destroyed by joinder of nondiverse parties if such joinder is fraudulent." *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). In determining whether a defendant has been fraudulently joined, the Seventh Circuit requires not just an analysis of whether plaintiff has stated a "claim," but also whether plaintiff has a "reasonable possibility" of recovery on that claim. *See Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875 (7th Cir. 1999) (finding removal proper because of fraudulent joinder, notwithstanding the fact that plaintiff had a "claim" under the concept of notice pleading).

14. Plaintiff attempts to state claims against the pharmacy defendants for negligent failure to warn, strict liability (based on sale of a defective product), and breach of warranty. (Comp. at Counts II, IV, and VII).

15. As an initial matter, the pharmacy defendants are fraudulently joined because plaintiff's claims against them are wholly inconsistent with the essence of her entire Complaint: that Merck misled the public and physicians regarding the safety of FOSAMAX. After all, plaintiff asserts in her Complaint that Merck misled and withheld information regarding the safety of FOSAMAX from plaintiff herself, the consuming public generally, and even from the

health care industry. *See, e.g.*, Comp. at ¶ 17 (Merck "concealed its knowledge of FOSAMAX's unreasonably dangerous risks from Plaintiff Dianne Walla, other consumers, and the medical community"); *see also id.* at ¶¶ 44-45, 105-110. At the same time, plaintiff also alleges that Walgreens and K Mart – mere service providers that fill prescriptions written by physicians – were sufficiently aware of the risks associated with FOSAMAX that their failure to disclose those risks breached a duty to plaintiff. Plaintiff's claims that Merck misled the public at large demonstrate that her claims against Walgreens and K Mart cannot succeed. Such inconsistency only goes to prove that they were joined solely for the improper purpose of avoiding federal jurisdiction. *See, e.g., In re Rezulin Prods. Liab. Litig.* ("*Rezulin I*"), 133 F. Supp. 2d 272, 295 (S.D.N.Y. 2001) (finding that non-diverse physicians were fraudulently joined because the plaintiffs' allegations that the drug manufacturer had concealed the drug's risks from everyone "refutes the assumption that . . . [the] physician had knowledge of [the drug's] harmful effect"); *Wiggins v. Am. Home Prods. Corp.*, 2001 WL 34013629 (N.D. Ala. Oct. 2, 2001) (in-state pharmacy was fraudulently joined where plaintiff made no specific allegation against the pharmacy), *aff'd mem.*, No. 02-10528, 2002 WL 1276993 (11th Cir. May 29, 2002).

16. The pharmacy defendants have also been fraudulently joined because plaintiff does not have a reasonable possibility of prevailing on any of the claims she asserts against them. Plaintiff's negligent failure-to-warn claim against the pharmacy defendants is not viable because Illinois courts have held repeatedly that a pharmacy owes no such duty and thus cannot be liable for failure to warn as a matter of law. *See, e.g., Leesley v. West*, 165 Ill. App. 3d 135 (2d Dist. 1988) ("illogical and inequitable" to impose such a duty on pharmacist); *Frye v. Medicare-Glaser Corp.*, 153 Ill.2d 26, 34 (Ill. 1992) ("In our opinion, consumers should principally look to their prescribing physician to convey the appropriate warnings regarding drugs, and it is the

prescribing physician's duty to convey these warnings to patients"); *Kasin v. Osco Drug, Inc.*, 312 Ill. App. 3d 823, 826 (2d Dist. 2000) (noting that the learned intermediary doctrine has been applied by Illinois courts to "exempt pharmacies and pharmacists from giving warnings to patients").

17. Similarly, Illinois courts have foreclosed as a matter of law any possibility of recovery on a claim of strict liability against a pharmacy based upon the sale of prescription drugs. *See Leesley*, 165 Ill. App. 3d at 140-41 (concluding that a seller of a prescription drug cannot be held strictly liable when the drug is distributed in the usual manner, *i.e.*, prescribed by a physician who received the required warnings).

18. Plaintiff's breach of warranty claim against the pharmacy defendants is barred as well. *See Brandt v. Boston Scientific Corp.*, 204 Ill.2d 640 (2003) (holding that sale of medical products in connection with surgery was not sale of goods and that a breach of warranty claim could not be brought); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 289 (S.D.N.Y. 2001) ("Almost every state confronted with the question has declined to impose on pharmacists a duty to warn of intrinsic natures of prescription drugs. . . . Moreover, these states have not limited their holdings to failure to warn claims, but have shielded pharmacists from liability on theories of strict liability and breach of warranty as well"); *In re Diet Drugs*, 220 F. Supp. 2d 414, 422-24 (similar).

19. In short, plaintiff has joined the pharmacy defendants even though she has no reasonable likelihood of prevailing against them. Plaintiff's actions are part of "a pattern of pharmacies being named in complaints, but never pursued to judgment, typically being voluntarily dismissed at some point after the defendants' ability to remove the case has expired." *See In re Diet Drugs*, 220 F. Supp. 2d at 424. Because plaintiff cannot actually prevail on her

claims against the pharmacy defendants, the pharmacy defendants are fraudulently joined and diversity jurisdiction exists here.

### The Action Is Removable Because Diversity Exists Between All Parties And The Only Defendant That Has Been Properly Joined *And Served* Is Not A Citizen Of The State In Which The Action Is Brought.

20. As an alternative ground for removal, Merck removes this case pursuant to § 1441(b) on the grounds that "none of the parties in interest *properly* joined *and served* as defendants is a citizen of the state in which such action is brought." 28 U.S.C. § 1441(b) (emphasis added).

21. There is complete diversity of citizenship between all plaintiffs and all defendants. *See* ¶¶ 11-12, *supra*.

22. Upon information and belief, as of the time of filing of this Notice of Removal, neither Walgreens nor K Mart has been served with a summons and complaint in this action.

23. Looking at the plain language of 28 U.S.C. § 1441(b), removal is proper because on information and belief, none of the defendants has yet been served and the only defendant that has entered an appearance thus far in the Circuit Court of Cook County (*i.e.*, Merck) is not a citizen of Illinois, the state in which this action was brought. In other words, as the Seventh Circuit has recognized, only those parties that have been served (or who have waived service) need join in the removal. *See Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 369 (7th Cir. 1993) ("Block was not served until January 21, 1992, or nearly a month after the removal petition was filed on December 23, 1991, so that its consent was not needed."); *see also Test Drilling Svc. Co. v. Hanor Co.*, 322 F. Supp. 2d 953 (C.D. Ill. 2003) ("the presence of an unserved Defendant who is a citizen of the forum state does not prevent removal when complete diversity exists"); *In re Bridgestone/Firestone, Inc.*, 184 F. Supp. 2d 826, 828 (S.D. Ind. 2002) (§ 1441(b) only precludes

removal "if [in-state defendant] had been properly served" when removal petition filed) (emphasis in original). Indeed, this is the "virtually uniform[]" rule. *Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F. Supp. 2d 177, 180 (S.D.N.Y 2003) (construing § 1441(b), "courts have held, virtually uniformly, that where, as here, [complete] diversity does exist between the parties, an unserved resident defendant may be ignored in determining removability" (alteration in original) (quoting *Ott v. Consol. Freightways Corp.*, 213 F. Supp. 2d 662, 665 (S.D. Miss. 2002)); *see also McCall v. Scott*, 239 F.3d 808, 813 n.2 (6th Cir. 2001) ("Where there is complete diversity of citizenship,... the inclusion of an unserved resident defendant in the action does not defeat removal under 28 U.S.C. § 1441(b)."); *Wensil v. E.I. Dupont de Nemours & Co.*, 729 F. Supp. 447, 448 (D.S.C. 1992) (where out-of-state defendants removed before service on in-state defendants, removal was proper under § 1441(b)); *Republic W. Ins. Co. v. Int'l Ins. Co.*, 765 F. Supp. 628, 629 (N.D. Cal. 1991) ("Because [defendant] had not yet been served at the time that [another defendant] filed its removal petition the language of § 1441(b) mandates the finding that this case was properly removed.").

24.     Under the clear language of 28 U.S.C. § 1441(b), this action is properly removed to this Court by Merck.

### *MERCK HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL*

25.     This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

26.     The United States District Court for the Northern District of Illinois includes the county in which the state court action is now pending. Therefore, this action is properly removed to the Northern District of Illinois pursuant to 28 U.S.C. §§ 93(a) and 1441(a).

27.     Merck is the only defendant in this action that has not been fraudulently joined. Therefore, Merck need not obtain the consent of any party to remove this action. *See Shaw*, 994 F.2d at 369; *Siderits*, 830 F. Supp. at 1160; *Hess*, 520 F. Supp. at 375-76. Merck need not obtain

the consent of the remaining defendants to remove this action for the additional reason that, on information and belief, they have not yet been served.

28. Pursuant to 28 U.S.C. § 1446(d), Merck is filing written notice of this removal and a copy of the Notice of Removal with the clerk of the state court in which this action is currently pending and will serve a copy of this notice on all parties to the removed action.

WHEREFORE, Defendant Merck respectfully removes this action from the Circuit Court of Cook County, in the State of Illinois, bearing Number 2007L003232, to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

Dated: April 4, 2007

Respectfully submitted,

BRYAN CAVE LLP

By: _____
Dmitry Shifrin, #6279415
161 North Clark Street, Suite 4300
Chicago, IL 60601-3315
Telephone: (312) 602-5000
Facsimile: (312) 602-5050

and

Stephen G. Strauss, #6278807
Bryan Cave LLP
211 North Broadway, Suite 3600
St. Louis, MO 63102-2750
Telephone: (314) 259-2000
Facsimile: (314) 259-2020

*Attorneys for Merck & Co., Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of April, 2007 the foregoing document was mailed via first class U.S. mail to the following counsel of record:

G. Grant Dixon III
DIXON LAW OFFICES
1415 W. 55th Street
La Grange, IL 60525

Timothy M. O'Brien
Michael B. Lynch
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, P.A.
316 S. Baylen Street, Suite 600
P.O. Box 12308
Pensacola, FL 35291

_____
Dmitry Shifrin

2578565

11