# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | | | | | * | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| In re FOSAMAX PRODUCTS LIABILITY LITIGATION | | | | | | | MDL No. 06-1789 (JFK) | | | | |
| | | | | | | * | | | | | |
| * | * | * | * | * | * | * | * | * | * | * | * |
| DIANNE WALLA | | | | | | * | | | | | |
| Plaintiff, | | | | | | * | Case No. l:07-cv-3792 | | | | |
| v. | | | | | | * | | | | | |
| MERCK & CO., INC., *et al.*, | | | | | | * | | | | | |
| Defendants. | | | | | | * | | | | | |
| * | * | * | * | * | * | * | * | * | * | * | * |

## AFFIDAVIT OF AZRA BEHLIM

Azra Behlim, after being first duly sworn, makes this Affidavit and states as follows:

1.    I am over the age of 21 years and I make this Affidavit based on my own personal knowledge. I offer this Affidavit in support of Defendant Merck & Co., Inc.'s Opposition to Plaintiff's Motion for Remand.

2.    I have served as the Category Manager of Brand Pharmaceuticals for Defendant Walgreen Company, an Illinois corporation ("Walgreens"), from July 1, 2007 to the present. In that capacity, I am fully familiar with all name brand products currently sold by Walgreens.

3.    The prescription drug FOSAMAX® was manufactured by co-Defendant Merck & Co., Inc.

4.     Walgreens exercised no control over the design and manufacture of FOSAMAX®, did not have any control over the testing, study, production, formulation, marketing and promotion of FOSAMAX®, and did not provide instructions or warnings to the manufacturer of said drug.

5.     At all times relevant to this litigation, Walgreens possessed no knowledge or information regarding any defect in FOSAMAX® that might have caused the injuries that Plaintiff alleges in this case.

6.     Walgreens made no changes in FOSAMAX® prior to sale of the product to consumers.

7.     Walgreens is not aware of any facts or circumstances upon which a verdict might be reached against it, other than with regard to its status as a seller in the stream of commerce of FOSAMAX®.

I hereby swear and affirm under the penalties of perjury that the contents of the foregoing Affidavit are true to the best of my knowledge, information and belief.

Sworn to and subscribed before me this
_____15_____ day of April, 2008.

NOTARY PUBLIC

My commission expires: ___12/08/2009___

[SEAL]

OFFICIAL SEAL
DARLENE CLOTHIER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:12/08/09

2

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| In re FOSAMAX PRODUCTS LIABILITY LITIGATION | | | | | | * * | MDL No. 06-1789 (JFK) | | | | |
| * | * | * | * | * | * | * | * | * | * | * | * |
| DIANNE WALLA | | | | | | * | | | | | |
| Plaintiff, | | | | | | * | Case No. 1:07-cv-3792 | | | | |
| v. | | | | | | * | | | | | |
| MERCK & CO., INC., *et al.*, | | | | | | * | | | | | |
| Defendants. | | | | | | * | | | | | |
| * | * | * | * | * | * | * | * | * | * | * | * |

## AFFIDAVIT OF MARCIA T. KAISER

Marcia T. Kaiser, after being first duly sworn, makes this Affidavit and states as follows:

1.      I am over the age of 21 years and I make this Affidavit based on my own personal knowledge. I offer this Affidavit in support of Defendant Merck & Co., Inc.'s Opposition to Plaintiff's Motion for Remand.

2.      I have served as the Managing Claims Attorney for Defendant K Mart Corporation of Illinois ("K Mart"), from April 2005 to the present. In that capacity, I am fully familiar with all name brand products currently and previously sold by K Mart.

3.      The prescription drug FOSAMAX® was manufactured by co-Defendant Merck & Co., Inc.

4.      K Mart exercised no control over the design and manufacture of FOSAMAX®, did not have any control over the testing, study, production, formulation,

marketing and promotion of FOSAMAX®, and did not provide instructions or warnings to the manufacturer of said drug.

5.    At all times relevant to this litigation, K Mart possessed no knowledge or information regarding any defect in FOSAMAX® that might have caused the injuries that Plaintiff alleges in this case.

6.    K Mart made no changes in FOSAMAX® prior to sale of the product to consumers.

7.    K Mart is not aware of any facts or circumstances upon which a verdict might be reached against it, other than with regard to its status as a seller in the stream of commerce of FOSAMAX®.

I hereby swear and affirm under the penalties of perjury that the contents of the foregoing Affidavit are true to the best of my knowledge, information and belief.

_____
Marcia T. Kaiser, Esq.
Managing Claims Attorney
Kmart Corporation

Sworn to and subscribed before me this
16th day of April, 2008.

_____
NOTARY PUBLIC

My commission expires: __8/25/09__

[SEAL]

OFFICIAL SEAL
VICKI M DUNLAP
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/25/09

2

# EXHIBIT C

_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

**NOV 2 7 2002**

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: PHENYLPROPANOLAMINE
(PPA) PRODUCTS LIABILITY
LITIGATION,

MDL NO. 1407

ORDER DENYING PLAINTIFF'S
MOTION TO REMAND

This document relates to:

Barnett, et al. v. American
Home Products Corp., et al.,
No. C02-423R

1  THIS MATTER comes before the court on the motion of plain-

2  tiffs to remand the case to state court in Mississippi. Having

3  reviewed the papers filed in support of and in opposition to this

4  motion, the court rules as follows:

I.  BACKGROUND

Plaintiffs purchased a variety of over-the-counter drugs

including, but not limited to, products sold under the trade

names "Robitussin," "Alka-Seltzer Plus," "Dimetapp," "Tavist D,"

"BC," "Triaminic," "Contac," "Comtrex," and "Equate Tussin CF."

All of these products contained the ingredient phenylpro-

panolamine ("PPA"). The individuals later consumed the medica-

tion and suffered unidentified types of injuries. In June 2001,

plaintiffs filed an amended complaint in Mississippi state court

linking the PPA in the medicine with the injuries sustained.

ORDER
Page - 1 -



43

CC; counsel, BTR

1    The complaint alleges numerous causes of action against both
2  manufacturers and distributors of PPA-containing products, as
3  well as several retail stores that sold those products.  One of
4  the stores named as a defendant, Bill's Dollar Stores, Inc.,
5  d/b/a Bill's Dollar Store ("Bill's Dollar Store"), is a Missis-
6  sippi corporation.  Two of the six total plaintiffs purchased
7  PPA-containing products from Bill's Dollar Store.[1]

8    Defendants removed the complaint to federal court alleging
9  that plaintiffs fraudulently joined Bill's Dollar Store.  Plain-
10  tiffs moved to remand to state court.  The case was later trans-
11  ferred to this court as part of a multi-district litigation
12  ("MDL").

13                    II.  ANALYSIS

14    A plaintiff cannot defeat federal jurisdiction by fraudu-
15  lently joining a non-diverse party.  As an MDL court sitting in
16  the Ninth Circuit, this court applies the Ninth Circuit's fraudu-
17  lent joinder standard to the motion to remand.  See, e.g., In re
18  Diet Drugs Prods. Liab. Litig., 220 F. Supp. 2d 414, 423 (E.D.
19  Pa. 2002); In re Bridgestone/Firestone, 204 F. Supp. 2d 1149,
20  1152 n.2 (S.D. Ind. 2002); In re Tobacco/Gov'tal Health Care
21  Costs Litig., 100 F. Supp. 2d 31, 34 n.1 (D. D.C. 2000); In re

22

23    [1]Defendants assert the misjoinder of these plaintiffs'
   claims and request that the court sever and deny remand as to the
24  four plaintiffs who did not purchase any products from Bill's
   Dollar Store, or from any other Mississippi store.  However,
25  because, as discussed below, the court denies remand as to all
   plaintiffs named in this action, the court need not address the
26  question of misjoinder at this time.

ORDER
Page - 2 -

1  <u>Ford Motor Co. Bronco II Prods. Liab. Litig.</u>, MDL-991, 1996 U.S.
2  Dist. LEXIS 6769, at *2-4 (E.D. La. May 16, 1996).[2]  Under this
3  standard, joinder of a non-diverse party is deemed fraudulent
4  "'[i]f the plaintiff fails to state a cause of action against a
5  resident defendant, and the failure is obvious according to the
6  settled rules of the state.'"  <u>Morris v. Princess Cruises, Inc.</u>,
7  236 F.3d 1061, 1067 (9th Cir. 2001) (quoting <u>McCabe v. General</u>
8  <u>Foods Corp.</u>, 811 F.2d 1336, 1339 (9th Cir. 1987)).[3]

9      The propriety of removal to federal court is determined from
10  the allegations in the complaint at the time of removal.  <u>See</u>
11  <u>Ritchey v. Upjohn Drug Co.</u>, 139 F.3d 1313, 1318 (9th Cir. 1998)
12  However, in the case of fraudulent joinder, the defendant "'is
13  entitled to present the facts showing the joinder to be fraudu-
14  lent.'"  <u>Id.</u> (quoting <u>McCabe</u>, 811 F.2d at 1339).  <u>See also Morris</u>

15

16      [2] <u>See generally</u> <u>Menowitz v. Brown</u>, 991 F.2d 36, 40-41 (2d
    Cir. 1993); <u>In Re Korean Airlines Disaster</u>, 829 F.2d 1171, 1174-
17  76 (D.C. Cir. 1987).

18      [3] However, as a practical matter, application of the Fifth
    Circuit's fraudulent joinder standard would not alter the court's
19  conclusion.  <u>See</u> <u>Badon v. RJR Nabisco, Inc.</u>, 224 F.3d 382, 393
    (5th Cir. 2000) (remand is denied where there is "no reasonable
20  basis for predicting that plaintiffs might establish liability .
    . . against the in-state defendants.")  For example, recent MDL
21  courts utilized fraudulent joinder standards similar, and in one
    case identical, to the Fifth Circuit's standard in deeming
22  Mississippi pharmacies and their employees fraudulently joined
    for reasons similar to those expressed in this opinion.  <u>See</u> <u>In</u>
23  <u>re Diet Drugs Prods. Liab. Litig.</u>, 220 F. Supp. 2d at 423-24
    (noting that there had been "a pattern of pharmacies being named
24  in complaints, but never pursued to judgment, typically being
    voluntarily dismissed at some point after the defendants' ability
25  to remove the case has expired"); <u>In re Rezulin Prods. Liab.</u>
26  <u>Litig.</u>, 133 F. Supp. 2d 272, 279 & n.3, 288-92 (S.D.N.Y. 2001).

ORDER
Page - 3 -

1  236 F.3d at 1067-68 (citing <u>Cavallini v. State Farm Mut. Auto.</u>

2  <u>Ins. Co.</u>, 44 F.3d 256, 263 (5th Cir. 1995) for the proposition

3  that the court may "'pierc[e] the pleadings'" and consider

4  "summary judgment-type evidence.")

5    Defendants allege that plaintiffs fraudulently joined Bill's

6  Dollar Store, while plaintiffs claim the existence of legitimate

7  causes of action against Bill's Dollar Store, including products

8  liability, negligence, misrepresentation, and implied warranty

9  claims.  The parties also argue as to the relevance of a bank-

10  ruptcy petition filed by Bill's Dollar Store prior to the filing

11  of this suit.

12  A.  <u>Products Liability</u>

13    The complaint contains failure to warn and design defect

14  allegations pursuant to the Mississippi Products Liability Act.

15  Miss. Code Ann. § 11-1-63.  Under the Products Liability Act,

16  plaintiff must show that at the time the product left the control

17  of the manufacturer or seller, it was defective in failing to

18  contain adequate warnings or instructions, and/or was designed in

19  a defective manner.  Miss. Code Ann. § 11-1-63 (a)(i)(2)-(3).

20  Plaintiff must also show that the manufacturers and sellers knew,

21  or in light of reasonably available knowledge or the exercise of

22  reasonable care should have known, about the danger that caused

23  the alleged damage.  Miss. Code Ann. § 11-1-63 (c)(i),(f)(i).[4]

24

25    [4] <u>See also</u> <u>Huff v. Shopsmith, Inc.</u>, 786 So.2d 383, 387 (Miss.
   2001)("With the adoption of 11-1-63, common law strict liability,
26  as laid out in <u>State Stove Mfg. Co. v. Hodges</u>, 189 So.2d 113

ORDER
Page - 4 -

1    Plaintiffs allege in the complaint that "defendants" or "all

2  defendants" knew or should have known of dangers associated with

3  PPA.  Moreover, plaintiffs specifically aver this knowledge or

4  reason to know on the part of the retailer defendants, including

5  Bill's Dollar Store.  However, the court finds that no factual

6  basis can be drawn from the complaint that Bill's Dollar Store

7  had knowledge or reason to know of any dangers allegedly associ-

8  ated with PPA.

9    First, the complaint utilizes the plural "defendants" in a

10 number of allegations that one could not reasonably interpret to

11 include Bill's Dollar Store. See, e.g., Louis v. Wyeth-Ayerst

12 Pharm., Inc., No. 5:00CV102LN, slip op. at 5-9 (S.D. Miss. Sep.

13 25, 2000) (finding products liability allegations lodged against

14 "defendants" conclusory where there was no factual support for

15 conclusion that Mississippi pharmacies had knowledge or reason to

16 know of alleged dangers associated with various diet drugs).[5]

17

18 (Miss. 1966), is no longer the authority on the necessary
   elements of a products liability action.")

19
     [5] See also In re Diet Drugs Prods. Liab. Litig., 220 F. Supp.
20 2d at 424 (finding complaints, including failure to warn,
   negligence, breach of warranty, and strict liability claims,
21 devoid of specific allegations against Mississippi pharmacies and
   "filled instead with general statements levied against all
22 defendants, which most properly can be read as stating claims
   against drug manufacturers."); In re Rezulin Products Liab.
23 Litig., 133 F. Supp. 2d at 291 (finding improper joinder in case
   where Mississippi pharmacies were lumped in with manufacturers
24 and acts alleged, including failure to warn, breach of warranty,
   and fraud, were attributed to "'defendants' generally", but
25 never connected to the pharmacies); accord Badon, 224 F.3d at
   391-93 ("While the amended complaint does often use the word
26

ORDER
Page - 5 -

1  For example, the complaint describes "defendants" as members of
2  the Non-Prescription Drug *Manufacturers* Association ("NDMA").
3  Through this association, "defendants" purportedly participated
4  in numerous discussions relating to the safety of PPA over the
5  past two decades, had representatives sit on the NDMA PPA Task
6  Force, and funded relevant studies.  In other words, plaintiffs,
7  in significant part, demonstrate "defendants'" knowledge as to
8  risks allegedly posed by PPA through activities engaged in by
9  manufacturer defendants alone.

10      Indeed, while "defendants" are alleged to have been aware or
11  to have had responsibility for awareness of numerous scientific
12  journal articles, incident reports, medical textbooks, and other
13  reports containing information as to risks of PPA consumption,
14  general medical practitioners are excluded from this awareness
15  and described as being not "fully informed."  The complaint
16  supplies no factual support for a conclusion that a dollar store
17  possessed medical and scientific knowledge beyond that possessed
18  by medical practitioners.

19      Second, the complaint specifically lays the responsibility
20  for allegedly concealing dangers posed by PPA on the manufacturer
21  defendants.  For example, the complaint alleges that the manufac-
22  turer defendants concealed material facts regarding PPA through
23  product packaging, labeling, advertising, promotional campaigns

24

25  'defendants,' frequently it is evident that such usage could not
    be referring to the 'Tobacco Wholesalers.'"; finding conspiracy
26  allegations against Louisiana defendants entirely general).

ORDER
Page - 6 -

1  and materials, and other methods. This allegation directly
2  undermines and contradicts the idea that Bill's Dollar Store had
3  knowledge or reason to know of alleged defects. See, e.g.,
4  Louis, slip op. at 4-5 (finding complaint's "major theme" to
5  consist of the "manufacturers' intentional concealment of the
6  true risks of the drug(s), coupled with dissemination through
7  various media of false and misleading information of the safety
8  of the drug(s) at issue, [which belied] any suggestion of knowl-
9  edge, or reason to know by [the] resident defendants.") Cf. In re
10  Rezulin Products Liab. Litig., 133 F. Supp. 2d 272, 290 (S.D.N.Y.
11  2001) (finding Mississippi pharmacies facing failure to warn
12  claims fraudulently joined where "the theory underlying the
13  complaints [was] that the manufacturer defendants hid the dangers
14  of Rezulin from plaintiffs, the public, physicians, distributors
15  and pharmacists -- indeed from everyone.")

16       In sum, the court concludes that one could not reasonably
17  read the complaint to support the idea that the retailer defen-
18  dants had knowledge or reason to know of any dangers allegedly
19  associated with PPA. Indeed, reading the complaint as a whole,
20  this allegation reveals itself as directed towards the manufac-
21  turer defendants alone. As such, the court finds that plaintiffs
22  fail to state a products liability cause of action against Bill's
23  Dollar Store.[6]

24

25       [6] The complaint once alludes to an "alternative" breach of
26  express warranty claim under the Products Liability Act. See
    Miss. Code Ann. § 11-1-63 (a)(i)(4) (requiring a showing that the

ORDER
Page - 7 -

1  B.    Negligence and Misrepresentation

2      The complaint alleges negligence and misrepresentation by

3  Bill's Dollar Store.  A negligence cause of action also requires

4  a showing of knowledge or reason to know on the part of the

5  seller.  See, e.g., R. Clinton Constr. Co. v. Bryant & Reaves,

6  Inc., 442 F. Supp. 838, 851 (N.D. Miss. 1977) ("The rule is well

7  settled that in order to fasten liability upon a party for

8  negligence, it must be shown by a preponderance of the evidence

9  that he knew or through the exercise of reasonable care should

10 have known that his selection of a [product] would cause damage

11 to his customer.")[7]  A misrepresentation cause of action requires

12 _____

13 seller breached an express warranty or failed to conform to other
   express factual representations upon which the claimant relied).
14 However, the products liability allegations go on to touch solely
   upon failure to warn and design defect claims.  Because the
15 complaint lacks any factual basis for support of a breach of
   express warranty claim against Bill's Dollar Store, the court
16 also finds this bare allegation insufficient to support remand.

17     [7]Accord Louis, slip op. at 3-4 & n.3 ("[K]nowledge, or a
18 reason to know, is also a necessary requisite for any claim of
   failure to warn or negligence that a plaintiff might undertake to
19 assert extraneous to a claim under the Products Liability Act
   itself (assuming solely for the sake of argument that such a
20 claim could exist).");  Cadillac Corp. v. Moore, 320 So.2d 361,
   365 (Miss. 1975) (discussing negligence in "vendor/purchaser"
21 context and stating that "fault on the part of a defendant so as
   to render him liable is to be found in action or nonaction,
22 accompanied by knowledge, actual or implied, of the probable
   result of his conduct.")  Cf. Moore v. Memorial Hosp. of
23 Gulfport, 825 So.2d 658, 664-66 (Miss. 2002) (extending "learned
24 intermediary" doctrine to pharmacists in case involving
   prescription drug, and holding no actionable negligence claim
25 could exist against a pharmacy unless a plaintiff indisputably
   informed the pharmacy of health problems which contraindicated
26 the use of the drug in question, or the pharmacist filled

ORDER
Page - 8 -

1 | a plaintiff to show:

2 |     (1) a representation; (2) its falsity; (3) its materi-
3 |     ality; (4) the speaker's knowledge of its falsity or
      ignorance of its truth; (5) the speaker's intent that
      the representation should be acted upon by the hearer
4 |     and in the manner reasonably contemplated; (6) the
      hearer's ignorance of its falsity; (7) the hearer's
5 |     reliance on its truth; (8) the hearer's right to rely
      thereon; and (9) the hearer's consequent and proximate
6 |     injury.

7 | Johnson v. Parke-Davis, 114 F. Supp. 2d 522, 525 (S.D. Miss.

8 | 2000) (citing Allen v. Mac Tools, Inc., 671 So.2d 636, 642 (Miss.

9 | 1996)).

10 |     Again, the court finds that the general and contradictory

11 | allegations in the complaint do not support the existence of any

12 | knowledge or reason to know on the part of Bill's Dollar Store to

13 | support a negligence cause of action.  The court finds the

14 | complaint similarly bereft of any factual support for the idea

15 | that Bill's Dollar Store made any misrepresentations whatsoever

16 | to plaintiffs regarding the PPA-containing products.  See, e.g.,

17 | Johnson, 114 F. Supp. 2d at 525 ("Suffice it to say that Plain-

18 | tiffs have no proof . . . that any of the named [Mississippi]

19 | representatives made any representations directly to any of the

20 | Plaintiffs.  Thus, none of the Plaintiffs was the 'hearer' of any

21 | of the sales representatives' alleged misrepresentations.";

22 | finding plaintiffs had no cause of action for misrepresentation).

23 | Instead, as discussed above, the complaint attributes this

24 |

25 |

26 | prescriptions in quantities inconsistent with the recommended
   | dosage guidelines).

ORDER
Page - 9 -

1  behavior to the manufacturing defendants alone.  As such, the
2  court also finds that plaintiffs fail to state negligence and
3  misrepresentation causes of action against Bill's Dollar Store.

4  C.   Implied Warranty

5       The complaint also alleges that Bill's Dollar Store breached
6  implied warranties of merchantability and fitness for particular
7  purpose.  See Miss. Code Ann. §§ 75-2-314, 315.  The complaint
8  accuses "defendants" of breaching the implied warranty of mer-
9  chantability in failing to adequately label containers and
10 packages containing PPA, and because the products sold failed to
11 conform to promises or affirmations of facts made on the contain-
12 ers or labels.  See Miss. Code Ann. § 75-2-314 (2)(e)-(f).  The
13 complaint accuses both manufacturers and sellers of breaching the
14 implied warranty of fitness for particular purpose where they had
15 reason to know of the particular use of the products, and the
16 purchasers relied on the sellers' skill or judgment in selecting
17 and furnishing suitable and safe products.  See Miss. Code Ann. §
18 75-2-315.

19      In order to recover for breach of implied warranty, a buyer
20 "must within a reasonable time after he discovers or should have
21 discovered any breach notify the seller of breach or be barred
22 from any remedy."  Miss. Code Ann. § 75-2-607 (3)(a); accord C.R.
23 Daniels, Inc. v. Yazoo Mfg. Co., 641 F. Supp. 205, 210-11 (S.D.
24 Miss. 1986); Gast v. Rogers-Dingus Chevrolet, 585 So. 2d 725,
25 730-31 (Miss. 1991).  Here, the complaint contains no indication
26 that plaintiffs provided Bill's Dollar Store with any notice as

ORDER
Page - 10 -

to an alleged breach of warranty prior to the institution of this lawsuit.

Additionally, with respect to the merchantability claim, the complaint contains no factual support for a conclusion that Bill's Dollar Store was in any way involved with the labeling and/or packaging of the products at issue. Instead, the complaint alleges that the manufacturer defendants concealed material facts regarding PPA through product packaging and labeling.

The court likewise finds plaintiffs' fitness for particular purpose allegation insufficient. "Mississippi does not recognize an implied warranty of fitness for a particular purpose when the good is purchased for the ordinary purpose of a good of that kind." Farris v. Coleman Co., 121 F. Supp. 2d 1014, 1018 (N.D. Miss. 2000) (fitness for particular purpose claim failed where plaintiff purchased cooler to keep food and beverages cold - the ordinary purpose for which a cooler is used). Here, plaintiffs attested that they purchased PPA-containing products to remedy their "cold, flu, sinus and/or allergy symptoms" - the ordinary purpose of these medications.

Therefore, for the reasons stated above, the court finds that plaintiffs fail to state implied warranty causes of action against Bill's Dollar Store.

D.    Bankruptcy

Bill's Dollar Store filed a bankruptcy petition in February 2001, several months prior to the filing of plaintiffs' complaint.  The filing of the bankruptcy petition operates as a stay

ORDER
Page - 11 -

1  on judicial or other proceedings brought against Bill's Dollar
2  store that were or could have commenced prior to the commencement
3  of the bankruptcy proceeding.  See 11 U.S.C. § 362(a); In re
4  Cajun Elec. Power Co-Op, Inc., 185 F.3d 446, 457 (5th Cir. 1999).

5      Plaintiffs argue that the automatic stay poses no barrier to
6  relief given that they were unaware of the bankruptcy petition at
7  the time they filed their complaint, and because they anticipate
8  that the Bankruptcy Court will agree to their pending request to
9  lift the stay.  However, whether or not plaintiffs knew of the
10 petition and whether or not the stay may later be lifted, the
11 fact remains that, at the time plaintiffs filed their complaint,
12 the stay operated to prohibit their lawsuit.  As noted above, the
13 court determines jurisdiction based on the claims as stated at
14 the time of removal.  As such, the court finds the existence of
15 the stay at the time of filing serves as an additional reason to
16 deny remand of this matter to state court.  Cf. Ritchey, 139 F.3d
17 at 1319-20 (denying remand where the statute of limitations had
18 expired at the time plaintiff filed the complaint).[8]

19              III.  CONCLUSION

20     The court concludes that plaintiffs fail to state a cause of
21 action against the only non-diverse defendant, and that the

22

23     [8]Unlike in a number of other cases transferred to this MDL,
   the defendants here did not supply the court with any summary
24 judgment-type evidence to establish the retailer defendant's
   fraudulent joinder.  However, the court nonetheless finds that a
25 plain reading of the complaint does not allow a conclusion that
   plaintiffs state a cause of action against Bill's Dollar Store.
26

ORDER
Page - 12 -

1  failure is obvious according to the settled rules of Mississippi.

2  As such, the court finds Bill's Dollar Store fraudulently joined

3  and DENIES plaintiff's motion to remand the case to the state

4  courts of Mississippi.

5      DATED at Seattle, Washington this 26th day of November,

6  2002.

7

8

BARBARA JACOBS ROTHSTEIN
UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER
Page - 13 -

# EXHIBIT D



Not Reported in F.Supp.                                                                    Page 1
Not Reported in F.Supp., 1997 WL 809677 (S.D.Ala.)
**(Cite as: Not Reported in F.Supp., 1997 WL 809677)**

▶   Lyons v. American Tobacco Co., Inc.
S.D.Ala.,1997.
Only the Westlaw citation is currently available.
United States District Court, S.D. Alabama.
Gloria Wilkinson LYONS, et al., Plaintiffs,
v.
THE AMERICAN TOBACCO COMPANY, INC., et
al., Defendants.
**No. Civ.A. 96-0881-BH-S.**

Sept. 30, 1997.

**ORDER**

HAND, Senior J.
**\*1** This action is before the Court on the following
matters: (1) Plaintiffs' motion (Doc. 12) to remand;
(2) the motion (Doc. 17) of defendant B.A.T.
Industries, p.l.c. (B.A.T.Industries) to dismiss for
lack of personal jurisdiction; and (3) the motion
(Doc. 21) of defendant The Tobacco Institute, Inc.
(Tobacco Institute) to dismiss for lack of personal
jurisdiction. Upon consideration of these motions, the
respective briefs filed in support thereof and
opposition thereto and all pertinent portions of the
record, the Court concludes that the motion to
remand and the Tobacco Institute's motion to dismiss
are due to be denied while the motion to dismiss
B.A.T Industries is due to be granted.

As an introductory matter, it is undisputed that in
1994 counsel for the plaintiffs filed a lawsuit in the
United States District Court for the Eastern District
of Louisiana, and obtained from the district court a
nationwide class certification order. *Castano v. The
American Tobacco Company,* 160 F.R.D. 544
(E.D.La.1995). Plaintiffs concede that they were
members of the *Castano* class during its pendency.
Plaintiffs' Memorandum (Doc. 13) at 7. On May 23,
1996, the United States Court of Appeals for the Fifth
Circuit reversed the district court's certification order
as an abuse of discretion. *Castano v. The American
Tobacco Co.,* 84 F.3d 734 (5th Cir.1996). The case at
bar was filed shortly after the *Castano* decertification
and asserts five causes of action against various

cigarette manufacturers and distributors: (1) Fraud
and Deceit; (2) Suppression; (3) Negligent
Misrepresentation; (4) Breach of Express Warranty;
and (5) Breach of Implied Warranty.[FN1] The claims
asserted in this action are virtually identical to those
asserted in *Castano;* plaintiffs seek compensation
solely for the injury of nicotine addiction and
essentially assert a theory that the defendants
fraudulently failed to inform consumers that nicotine
is addictive and manipulated the level of nicotine in
cigarettes to sustain their addictive nature.

> FN1. What plaintiffs label as their sixth
> "cause of action" is simply a prayer for
> injunctive relief.

MOTION TO REMAND

Plaintiffs motion to remand is predicated on the
assertion that complete diversity does not exist
among the parties because (1) plaintiffs Wyatt Tuck
and Eleanor Tuck are properly joined plaintiffs who
are citizens of North Carolina as is the defendant R.J.
Reynolds Tobacco Company and (2) plaintiff Gloria
Wilkinson Lyons is a citizen of Alabama as are
certain properly joined distributors. The Court,
however, agrees with the defendants that complete
diversity does exist between the properly joined
parties in this litigation. The Court finds its
unnecessary to conduct oral arguments on this matter
as requested by the plaintiffs (Doc. 49) and such
request is therefore **DENIED.**

A. Plaintiffs Wyatt and Eleanor Tuck

Plaintiffs concede that the claims of Wyatt and
Eleanor Tuck did not arise in Alabama but rather
from acts occurring in North Carolina.[FN2] Plaintiffs
also assert that the state law claims they raise are in
no way preempted by federal law. Plaintiff's Reply
Memorandum (Doc. 36) at 10-11. Plaintiffs,
however, offer no explanation for the joinder of
Alabama and North Carolina plaintiffs beyond a mere
assertion of an alleged right to do so under a class
action aegis.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                          Page 2
Not Reported in F.Supp., 1997 WL 809677 (S.D.Ala.)
**(Cite as: Not Reported in F.Supp., 1997 WL 809677)**

FN2. *See,* Plaintiffs' Memorandum (Doc. 13) at 15.

**\*2** Although the Fifth Circuit in *Castano,* plaintiffs' predecessor class action litigation, emphasized that "[i]n a multi-state class action, variations in state law may swamp any common law issues and defeat predominance," plaintiffs herein have, without further explanation, continued their efforts to join two separate and distinct state law actions for fraud and product liability and have claimed a right of action "as provided by any state's law and/or as authorized by the choice of law provisions of the state in which this Court sits." *Cf., Castano,* 84 F.3d at 741 and Plaintiffs' Complaint at ¶ 63. With specific respect to the acts which give rise to the Tucks' claims for fraud, misrepresentation, suppression and breach of express or implied warranties, plaintiffs expressly acknowledge that such claims are "cognizable under North Carolina law." Plaintiffs' Reply Memorandum (Doc. 36) at 13, n. 1. The issues addressed in the *Castano* opinion, although directed toward the appropriateness of class certification in general and the specific designation of the class, is nonetheless relevant to the issue before this Court, namely whether the North Carolina plaintiffs have been joined in an effort to avoid diversity jurisdiction. It is particularly relevant to the case at bar inasmuch as the only explanation given by the plaintiffs for the joinder relates to the alleged appropriateness of joining the plaintiffs' class claims.[FN3]

FN3. Plaintiffs specifically argue that "pursuing the North Carolina Class Members' claims in this action is far more convenient to the parties than would be pursuing two separate actions in different locales." Plaintiffs' Reply Memorandum (Doc. 36) at 13. Plaintiffs also argue that "joinder of the North Carolina Plaintiffs will greatly enhance judicial economy, and likewise greatly reduce the expenses to the parties [and] will reduce the risk of conflicting determinations of fact on the question of conspiracy, and lessen the risk of inconsistent damages awards or of multiple punishment for the same offense. *Id.* at 14-15.

Another concern expressed by the Fifth Circuit in

*Castano,* which is also of concern to this Court, involves the predominance of the alleged common issues of law and/or fact. As stated in *Castano:*

A district court certainly may look past the pleadings to determine whether the requirements of rule 23 have been met. [Footnote omitted] Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues. *See,* MANUAL FOR COMPLEX LITIGATION § 30.11 (3d ed.1995).

The district court's predominance inquiry demonstrates why such an understanding is necessary.... Absent knowledge of how addiction-as-injury cases would actually be tried, however, it was impossible for the court to know whether the common issues would be a "significant" portion of the individual trials. The court just assumed that because the common issues would play a part in every trial, they must be significant. [n. 18: "[T]he district court in the instant case did not, and could not, have determined that the common issues would be a significant part of each case.... [T]he district judge *a quo* had no experience with this type of case and did not even inquire into how a case would be tried to determine whether the defendants' conduct would be a significant portion of each case.] The court's [analysis] would write the predominance requirement out of tile rule, and any common issue would predominate if it were common to all the individual trials. [n. 19: "An incorrect predominance finding also implicates the court's superiority analysis: The greater tile number of individual issues, the less likely superiority can be established."]

**\*3** *Castano,* 84 F.3d at 744-45. The Fifth Circuit also noted Professor Charles Allen Wright's opinion that "Judge Jones in Louisiana would be creating a Frankenstein's monster if he should allow certification of what purports to be a class action on behalf of everyone who has ever been addicted to nicotine." *Id., quoting,* Letter of Professor Charles Allen Wright to N. Reid Neureiter, Williams & Connolly, Washington, D.C. The importance of these observations is enhanced by the findings in *Castano* that:

The plaintiffs initially defined the class as "all nicotine dependent persons in the United States,"

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                                Page 3
Not Reported in F.Supp., 1997 WL 809677 (S.D.Ala.)
**(Cite as: Not Reported in F.Supp., 1997 WL 809677)**

including current, former and deceased smokers since 1943. Plaintiffs conceded that addiction would have to be proven by each class member; the defendants argued that proving class membership will require individual mini-trials to determine whether addiction actually exists.

[and] the district court refused to certify the issues of injury-in-fact, proximate cause, reliance, affirmative defenses, and compensatory damages, concluding that the "issues are so overwhelmingly replete with individual circumstances that they quickly outweigh predominance and superiority." Specifically, the court found that whether a person suffered emotional injury from addiction, whether his addiction was caused by the defendants' actions, whether he relied on the defendants' misrepresentations, and whether affirmative defenses unique to each class member precluded recovery were all individual issues. As to compensatory damages and the claim for medical monitoring, the court concluded that such claims were so intertwined with proximate cause and affirmative defenses that class certification would not materially advance the individual cases.

*Castano, 84 F.3d at 738 and 740.* Plaintiffs herein have asserted the same claims as were previously raised in *Castano* and seek the same class certification, albeit restricted to Alabama and North Carolina plaintiffs' classes. The statistical facts alleged by the plaintiffs in their complaint at paragraphs 32 support a conclusion similar to that reached in *Castano* that "the issues of injury-in-fact, proximate cause, reliance, affirmative defenses, and compensatory damages ... are so overwhelmingly replete with individual circumstances" that class certification on such issues would be inappropriate. *Cf.* *Complaint at ¶ 32 and Castano, 84 F.3d at 738 and 740.* Plaintiffs also acknowledge that tobacco addiction involves both "pharmacologic and behavioral processes" (Complaint at ¶ 33) which of necessity requires individual analysis. Consequently, the observations in *Castano* which are quoted above are again particularly relevant to the case at bar because plaintiffs' rationale for joining the North Carolina plaintiffs and North Carolina class claims is solely the alleged superiority of the class action form of litigation.

*4 The joinder of Wyatt and Eleanor Tuck, either individually or as representatives of similarly situated

North Carolina residents, to assert nicotine addiction claims which are inherently separate and distinct from the claims asserted by the Alabama plaintiff, is clearly improper. The attempted joinder of the Tucks, particularly in light of *Castano, supra,* is therefore nothing more than a transparent artifice to defeat the diversity jurisdiction of this Court.[FN4] As plaintiffs have appropriately recognized, the Eleventh Circuit explicitly rejected the argument that "misjoinder [under Rule 20], no matter how egregious, is not fraudulent joinder." *Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir.1996).* To the contrary, the Eleventh Circuit held that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." *Id.* Nothing in the *Tapscott* opinion limits its application to joinder of defendants; its reasoning is equally applicable to cases involving the misjoinder of named representative plaintiffs in a putative class action. Plaintiffs nonetheless contend that the mere assertion of a conspiracy among the defendants is sufficient to limit the application of *Tapscott* 's fraudulent misjoinder principle to this case. Plaintiffs' Reply Memorandum (Doc. 36) at 17. Such a contention is specious, particularly in light of the obvious lack of predominance of any common legal principle or fact related to plaintiffs' addiction claims with their inherent individual issues of injury-in-fact, proximate cause, reliance, affirmative defenses and compensatory damages.

> FN4. The Court does not hold that a party is *per se* fraudulently joined merely because plaintiff's counsel's subjective intent motivating the attempted Rule 20 joinder is to avoid federal diversity jurisdiction. *Tapscott* requires an "egregious misjoinder" in order for fraudulent joinder to exist and the Court finds such on this record and in view of *Castano.*

In *Tapscott,* the district court severed the nondiverse portion of the case and granted the motion to remand with respect to that portion. In this case, however, such a disposition would result in two nicotine addiction lawsuits: one proceeding in this Court with Ms. Lyons potentially representing a class of nicotine addicted Alabama smokers, and one proceeding in an Alabama state court with North Carolina plaintiffs purporting to represent nicotine addicted North Carolina smokers. *Rule 21 of the Federal Rules of*

Not Reported in F.Supp.                                                                                    Page 4
Not Reported in F.Supp., 1997 WL 809677 (S.D.Ala.)
**(Cite as: Not Reported in F.Supp., 1997 WL 809677)**

Civil Procedure[FN5] explicitly places it within the sound discretion of this Court to sever and dismiss misjoined parties "on such terms as are just." *Beritiech v. Metropolitan Life Ins. Co.,* 881 F.Supp. 557 (S.D.Ala.1995); Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1682. Dismissal of the claims of Wyatt and Eleanor Tuck will be just to all parties involved in this litigation. Defendants will not be deprived of their right to defend themselves in a federal forum through the sophistic pleadings of the plaintiffs. Neither the Alabama nor the North Carolina plaintiffs will be prejudiced by the dismissal as Ms. Lyons will remain the putative class representative of all nicotine addicted Alabama smokers and the Tucks and proposed class of North Carolina plaintiffs were joined for no legitimate reason in the first instance. Moreover, the Tuck plaintiffs remain free to re-file a similar class action either in a court in North Carolina or in any other state in which they contend such may be maintained with or without joinder of a resident of that state.

> FN5.Rule 21 of the Federal Rules of Civil Procedure provides:
>
> Misjoinder of parties is not ground for dismissal of an action. **Parties may be added or dropped by order of the court** on motion of any party or **of its own initiative** at any stage of the action and on such terms as are just. Any claim against a may be severed and proceeded with separately.
>
> Fed.R.Civ.P. 21 (emphasis added).

B. The Distributor Defendants

**\*5** The Court also agrees with the defendants that plaintiffs have attempted to defeat federal diversity jurisdiction by naming two Alabama distributors, City Wholesale Grocery Company, Inc. and American Candy Corporation [FN6], and one North Carolina distributor, Thomas & Howard Company of Hickory, Inc, against whom plaintiffs have no possible claim.[FN7] Although plaintiffs in their complaint as in their respective briefs filed in support of their motion to remand generally refer to all defendants collectively in conjunction with at least three of their causes of action, namely their claims for fraud and deceit and for breaches of express and implied warranties, there exists no specific factual allegations in the Complaint to support such claims against the distributors. *See,* Defendants' Memorandum in Opposition (Doc. 35) at 7-11, which the Court adopts as its opinion. To the extent plaintiffs might have raised such fraud and breach of warranty claims against the distributors, the Court also concludes that such claims are barred by the applicable two year statute of limitations. *See,* Defendants' Memorandum in Opposition (Doc. 35) at 11-16, which the Court also adopts as its opinion.

> FN6. Although plaintiffs avoid the issue, they do not dispute the contention that American Candy Corporation does not distribute tobacco products while an entity known as American Candy and Tobacco Company which does so distribute tobacco products was not named at the time of removal.
>
> FN7. The Court also agrees with the defendants that a party fraudulently joined to defeat removal based on federal diversity jurisdiction need not join in or consent to removal but that, in any event, the distributor defendants had so consented in this case. *See,* Defendants' Surreply (Doc. 41) at 2 and cases cited therein.

Although plaintiffs cite no legal support for the proposition, they essentially contend that their alleged conspiracy claim [FN8] constitutes a catch-all mechanism by which to boot-strap claims against tobacco distributors, who themselves are not alleged to have been involved either in the manufacturing process or in any specific direct contact with any of the plaintiffs, to the alleged misconduct of tobacco manufacturers. It is indeed a novel, albeit ludicrous, proposition.

> FN8. The Court agrees with the defendants that paragraphs 36 through 47, cited by the plaintiffs as their conspiracy claim, neither alleges any agreement between the tobacco manufacturers and the distributors nor alleges any actions taken by any entity other than the tobacco manufacturers acting individually.

Plaintiffs also argue that "The Resolution Of Issues

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                          Page 5
Not Reported in F.Supp., 1997 WL 809677 (S.D.Ala.)
**(Cite as: Not Reported in F.Supp., 1997 WL 809677)**

Of Law Regarding The Named Distributor Defendants Is Premature ... [because] discovery has yet to be conducted." Plaintiffs' Reply Memorandum (Doc. 36) at 7. Plaintiffs subsequently contend that "[d]iscovery is essential for the Plaintiffs to fully prepare arguments concerning the jurisdictional status of the defendant distributors." *Id.* at 7-8. Plaintiffs rely solely on the discretion given the Court in Fed.R.Civ.P. 56 to delay ruling on a motion for summary judgment until the opposing party is permitted to complete all necessary discovery. Plaintiff cites no authority for such fishing expeditions prior to a judicial determination that certain parties have been fraudulently joined in order to avoid or destroy federal diversity jurisdiction. The issues raised as a result of plaintiffs' motion to remand, specifically the manner in which plaintiffs have pled their claims on behalf of North Carolina residents and against distributors and whether the North Carolina plaintiffs and the distributors have been fraudulently joined to avoid federal diversity jurisdiction, are essentially, as plaintiff first acknowledged, legal issues which do not require the conduct of discovery as authorized by Fed.R.Civ.P. 26, *et seq.* In addition, Fed.R.Civ.P. 11 prohibits the assertion of unfounded claims on behalf of or against any party. If plaintiffs were unable at the time they formulated their complaint to set forth any specific factual allegations against the distributor defendants upon which could be based any claim of fraud or breach of warranty, there can be no better admission of fraudulent joinder of these defendants. Consequently, the Court concludes that the distributor defendants have been fraudulently joined and are due to be dismissed without prejudice pursuant to Fed.R.Civ.P. 21.

*6 Inasmuch as the Court has concluded that the North Carolina plaintiffs and the distributor defendants are due to be dismissed, complete diversity does exist between the properly joined parties in this litigation and plaintiffs' motion to remand is due to be denied .[FN9]

FN9. Although not specifically referred to in the text, the Court's decision on plaintiffs' motion to remand followed consideration of all the briefs filed in support of or opposition to the motion, including the various supplemental briefs. *See e.g.,* Docs. 53, 55, 57 and 59.

MOTIONS TO DISMISS

The Court has also considered the motions (Docs. 17 and 21) filed by B.A.T. Industries, p.l.c. (B.A.T.Industries) and the Tobacco Institute, Inc. (Tobacco Institute) to dismiss for lack of personal jurisdiction, together with plaintiffs' responses in opposition thereto (Docs. 37 and 38), the reply briefs of these defendants (Docs. 41 and 46), and the various supplemental filings of the moving and opposing parties (Docs. 39, 46, 54, 56, 60, 61 and 63). To the extent these defendants have moved the Court for leave to file supplemental authority, i.e. Docs. 60 as duplicative of 61 and 63, such motions are **GRANTED.**

Upon consideration of these arguments, the Court first concludes that the plaintiffs have carried their burden to demonstrate that the Tobacco Institute has sufficient minimum contacts with the State of Alabama to satisfy the requirements of either the Due Process Clause or Alabama's Long-Arm Statute. Consequently, the Tobacco Institute's motion to dismiss is due to be denied.

In conjunction with the Court's consideration of B.A.T Industries motion to dismiss, the Court first concludes that plaintiffs' motion (Doc. 50) to strike B.A.T. Industries' Reply brief (Doc. 46) is due to be denied. In addition, the Court has reviewed the objections (Doc. 44) filed by defendant Brown & Williamson Tobacco Corporation (B & W) to certain exhibits submitted by the plaintiffs to their Memorandum (Doc. 38) in Opposition to B.A.T. Industries' motion to dismiss and concludes, as did the Court in *Smith v. Brown & Williamson Tobacco Corp.,* No. 96-0459-CV-W-3, 1996 WL 751399 (W.D.Mo. Dec.19, 1996), that "there is no need to expend the parties' (and judicial) resources to determine whether these documents are privileged[;] [t]he documents will be considered for purposes of [B.A.T Industries'] motion without ruling or waiving B & W's objections."

Finally, the Court concludes, for the reasons set forth in B.A.T. Industries' motion to dismiss (Doc. 17), as thereafter supplemented (Docs. 46 and 54), and in *Smith v. Brown & Williamson Tobacco Corp. .,* No. 96-0459-CV-W-3, 1996 WL 751399 (W.D.Mo. Dec.19, 1996), that plaintiffs have failed to carry

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                        Page 6
Not Reported in F.Supp., 1997 WL 809677 (S.D.Ala.)
**(Cite as: Not Reported in F.Supp., 1997 WL 809677)**

their burden to demonstrate that B.A .T. Industries has sufficient minimum contacts with the State of Alabama to satisfy the requirements of either the Due Process Clause or Alabama's Long-Arm Statute.[FN10] Consequently, B.A.T. Industries' motion to dismiss is due to be granted.

> [FN10.] The Court has found it unnecessary to rely upon any of the redacted portions of the B.A.T. Industries' brief which was filed under seal.

### CONCLUSION AND ORDER

As stated above, the Court concludes and it is therefore **ORDERED** as follows:

1. Plaintiffs' motion to remand (Doc. 12) is due to be and is hereby **DENIED.**

2. Plaintiffs Wyatt and Eleanor Tuck are due to be and are hereby **DISMISSED without prejudice** pursuant to Fed.R.Civ.P. 21.

**\*7** 3. The distributor defendants, City Wholesale Grocery Company, Inc., American Candy Corporation and Thomas & Howard Company of Hickory, Inc, are due to be and are hereby **DISMISSED without prejudice** pursuant to Fed.R.Civ.P. 21.

4. The motion to dismiss (Doc. 17) filed by B.A.T. Industries, p.l.c. is due to be and is hereby **GRANTED.**

5. The motion to dismiss (Doc. 21) filed by the Tobacco Institute, Inc. is due to be and is hereby **DENIED.**

As also stated above, it is FURTHER ORDERED that plaintiffs' motions (Docs. 49 and 50) for oral arguments on their motion to remand and to strike B.A.T. Industries' reply brief are hereby **DENIED;** the motions of B.A.T. Industries and the Tobacco Institute to file supplemental materials (Docs. 53, 54, 55, 60, 61 and 63) are hereby *GRANTED;* and the objections of defendant B & W (Doc. 44) to the exhibits submitted by the plaintiffs in opposition to B.A.T. Industries' motion to dismiss are **OVERRULED** only to the extent they were

considered in connection with B.A.T. Industries' motion to dismiss. The Court will not otherwise rule on B & W's objections and the same shall therefore be presently considered MOOT.

S.D.Ala.,1997.
Lyons v. American Tobacco Co., Inc.
Not Reported in F.Supp., 1997 WL 809677 (S.D.Ala.)

END OF DOCUMENT

# EXHIBIT E



Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2003 WL 23305516 (D.Minn.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 23305516)**

In re Baycol Products Litigation
D.Minn. 2003.
Only the Westlaw citation is currently available.
United States District Court, D. Minnesota.
In re: BAYCOL PRODUCTS LITIGATION.
Nanette LOWE,
v.
BAYER et al.
ORA LEE WASHINGTON,
v.
BAYER et al.
**MDL No. 1431 (MJD/JGL)**
**Civil Case No. 03-3150**
**Civil Case No. 03-3151**

December 15, 2003.

MEMORANDUM AND ORDER

**\*1** This Document also relates to:

Carol E. Rhodes, Rhodes Law Offices, for and on behalf of Plaintiffs.

William F. Goodman Ill, Rebecca Wiggs, and C. Alleen McClain, Watkins & Eager PLLC, for and on behalf of Bayer Corporation.

Joshua J. Wiener, Butler Snow O'Mara Stevens & Cannada, for and on behalf of SmithKline Beecham Corporation d/b/a GlaxoSmithKline.

This matter is before the Court upon Plaintiffs' Motions for Remand to the Circuit Court of Jefferson County, Mississippi. Defendants oppose the motions, arguing that this Court has diversity jurisdiction over Plaintiffs' claims.

**I. BACKGROUND**

These cases were originally filed in Mississippi state court, and both Plaintiffs are citizens of the state of Mississippi. The complaints are virtually identical, with only the applicable names and dates being different in each complaint. Therefore, any citations to the complaint will include the identical paragraphs in both complaints, unless otherwise noted. Plaintiffs allege that they were prescribed Baycol and suffered permanent injuries; mental, emotional, and physical pain and suffering; worry, depression, anxiety, and psychological problems; loss of income and earning capacity; and loss of vitality and capacity to enjoy life as a result of taking the drug. (Compl. ¶¶ 351, 81, 89.) Plaintiffs have asserted a number of claims against Defendants Bayer and GlaxoSmithKline. Plaintiffs have also asserted claims against their treating physicians.

Defendants timely removed this action to the United States District Court, District of Mississippi asserting subject matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332(a). In the removal petition, Defendants asserted that the non-diverse defendants, Plaintiffs' treating physicians, were fraudulently joined. Subsequently, these matters were transferred to this Court by the Judicial Panel on Multidistrict Litigation.

**II. STANDARD**

Remand to state court is proper if the district court lacks subject matter jurisdiction over the asserted claims. 28 U.S.C. § 1447(c). In reviewing a motion to remand, the court must resolve all doubts in favor of remand to state court, and the party opposing remand has the burden of establishing federal jurisdiction by a preponderance of the evidence. *See*_In re Business Men's Assurance Co. of America, 992 F.2d 181, 183 (8th Cir. 1983)_ (citing _Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3rd Cir. 1987), cert. dismissed484 U.S. 1021 (1988)_). In determining the propriety of remand, the Court must review the plaintiffs' pleadings as they existed at the time of removal. *See*_Pullman Co. v. Jenkins, 305 U.S. 534, 537 (1939); Crosby v. Paul Hardeman, Inc., 414 F.2d 1, 3 (8th Cir. 1969)_.

**\*2** "Joinder is fraudulent and removal is proper when there exists no reasonable basis in fact and law

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                Page 2
Not Reported in F.Supp.2d, 2003 WL 23305516 (D.Minn.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 23305516)

supporting a claim against the resident defendants." *Wiles v. Capitol Indem. Corp.*., 280 F.3d 868, 871 (8th Cir. 2001) (citation omitted). The burden is on the removing party to show that there is no possibility that the plaintiff will be able to state a cause of action against the resident defendant. *See* *Masepohl v. American Tobacco Co., Inc.*, 974 F. Supp. 1245, 1250 (D. Minn. 1997). In doing this issue, the Court may consider the pleadings and supporting affidavits. *See* *Parnas v. General Motors Corp.*, 879 F. Supp. 91, 92 (E.D. Mo. 1995).

## III. DISCUSSION

Plaintiffs have asserted a number of claims against Bayer and Glaxo ("Defendants") based on strict liability, negligence, misrepresentation, fraud, and breach of implied and express warranties. (Compl. ¶¶ 34-73.) Generally, the claims against Defendants are based on allegations that Baycol was unsafe and in an unreasonably dangerous condition when marketed; that Defendants knew Baycol was unsafe; that Defendants failed to adequately warn of Baycol's risks; that Defendants failed to conduct proper testing of Baycol; and that Defendants made false statements to physicians and the public regarding Baycol's safety. (*Id.*) Plaintiff Washington also asserts negligence claims against her physician, Dr. McArthur; and Plaintiff Lowe asserts identical claims against her physician, Dr. Bills. (Compl. ¶¶ 74-89.)

Defendants argue that the main thrust of Plaintiffs' complaints is that Defendants misrepresented the safety of Baycol, and failed to warn of the serious risks associated with Baycol when manufacturing and selling the drug. Thus, according to Defendants, Plaintiffs have failed to sufficiently plead either that their physicians proximately caused Plaintiffs' injuries, or that the physicians knew or should have known of Baycol's risks. In addition, Defendants aver that Plaintiffs have failed to provide a sufficient factual basis for their allegations that the physicians did not perform the appropriate testing recommended by Defendants. Having failed to alleged a cause of action against the physicians, Defendants assert that the physicians' joinder in this case was fraudulent. For support, Defendants cite, *inter alia*, another case decided in conjunction with this MDL, *Spier v. Bayer Corp.*, No. 02-4835, 2003 WL 21223842 (D. Minn. May 27, 2003). In *Spier*, this Court concluded that since the complaint alleged that Bayer failed to

properly represent Baycol's safety and failed to adequately warn physicians of Baycol's risks, the plaintiff failed to demonstrate that her physician know or should have known of Baycol's risks. *See* *Spier, 2003 WL 21223842, at *2*. This Court found that the plaintiff s physician had been fraudulently joined, and denied the plaintiffs motion to remand to state court. *Seeid.* The Court finds that the complaints in the instant cases suffer from the same deficiencies as the complaint in *Spier*.

**\*3** Plaintiffs assert that their physicians violated the appropriate standard of care in the following ways:

A. Failing to conduct adequate pre-clinical testing, post-marketing surveillance, and blood tests to determine the safety of Baycol;

B. Negligently or carelessly prescribing Baycol;

C. Failing to warn or inform [Plaintiffs] prior to or during [their] use of Baycol … about the … risks and/or side effects, of which these Defendant [physicians] knew or should have known;

D. The need for comprehensive, regular monitoring to ensure discovery of potentially serious side effects;

E. The possibility of dying or becoming disabled as a result of the drug's use and/or having to undergo surgery to correct kidney damage that [sic];

F. That Rhabdomyolysis may result in permanent injuries.

(Compl. ¶ 77.) Plaintiffs also assert that their physicians did not perform "adequate and/or subsequent lab tests recommended by the manufacturers of Baycol," did not properly monitor Plaintiffs' Baycol use, and were "otherwise careless or negligent in other material respects to be shown at trial."(*Id.* ¶¶ 79, 80, 88.)

The vast majority of Plaintiffs' complaints, however, support the position that the manufacturers concealed Baycol's risks, and that the physicians did not know those risks prior to prescribing the drug. The complaints state, *inter alia, that*

Drug Company Defendants knew, or should have

Not Reported in F.Supp.2d　　　　　　　　　　　　　　　　　　　　　　　Page 3
Not Reported in F.Supp.2d, 2003 WL 23305516 (D.Minn.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 23305516)

known, that unreasonably dangerous risks were associated with the use of [Baycol] … and permitted [Baycol] to be promoted and sold without adequate warnings of the serious side effects and dangerous risks to the consuming public.

Drug Company Defendants … failed to advise or adequately warn the public, doctors, hospitals, or clinics that there were special risks associated with the use of Baycol.

Drug Company Defendants engaged in, and conspired together, to defraud and deceive Plaintiff[s] and [their] prescribing physician[s], pharmacist and members of the general public.

Drug Company Defendants engaged in a fraudulent advertising, marketing and distribution scheme … directed at Plaintiff[s], [their] prescribing physician[s], pharmacist[s] and the general public.

Drug Company Defendants … falsely and fraudulently represented to physicians … and members of the general public, that the drug was in fact safe and not unreasonably dangerous to its users.

Drug Company Defendants … failed to inform and advise Plaintiff[s] [and their] prescribing physician[s] … that the side effects of rhabdomyolysis and renal failure were known prior to approval of the drug.

Drug Company Defendants … failed to emphasi[ze] to Plaintiffs [and their] prescribing physician[s] … that patients with pre-existing kidney problems should not take Baycol and that there was no reliable way to protect them.

**\*4** Drug Company Defendants … failed to advise Plaintiff[s] [and their] prescribing physician[s] … prior to June 2001 that taking higher starting dosages of Baycol created a substantially higher risk of rhabdomyolysis and renal failure.

Drug Company Defendants, with the intent to deceive and defraud Plaintiff[s] and [their] prescribing physician[s] … fraudulently … represented that the drug Baycol had side effects comparable to placebo when, in fact, clinical trials … revealed that patients who took Baycol had an incidence of muscle pain almost seven times higher

… and joint pain almost four times higher than patients given placebos.

Drug Company Defendants … falsely promoted Baycol to Plaintiff[s] [and their] prescribing physician[s] … as a drug whose safety was backed up by clinical tests. The Drug Company Defendants … further fraudulently failed to inform Plaintiff[s] [and their] prescribing physician[s] … that since January 2000, over 100 fatalities were linked to the use of Baycol.

Plaintiff[s] and [their] prescribing physician[s] had a right to rely on such statements, representations, omissions, advertisements or promotional schemes which were material to the decision to take or prescribe Baycol and, [their] prescribing physician[s] would not have prescribed it, if [they] had known that said statements … were deceptive, false, incomplete, misleading, and untrue.

(Compl. ¶¶ 53, 55, 65, 66, 69(C), 69(D), 69(E), 69(F), 69(H), 69(J), 70.)

The Court finds that Plaintiffs have failed to demonstrate that their physicians knew or should have known of Baycol's risks. _Spier,_ 2003 WL 21223842, at *2. A defendant cannot be held liable for failing to warn of unknown risks. Therefore, Plaintiffs' motions to remand must be denied on this basis. _Seeid._(stating that "conclusory allegations" are insufficient to defeat a finding of fraudulent joinder).

Plaintiffs also aver that their physicians "did not perform adequate and/or subsequent lab tests recommended by the manufacturers of Baycol," and did not properly monitor Plaintiffs' Baycol use. (Compl. ¶¶ 79, 88.) The complaints never identify any specific tests or monitoring, other than "liver tests," which their physicians failed to conduct, and do not even state that Plaintiffs suffered liver problems as a result of taking Baycol. The Court also finds these conclusory allegations insufficient to defeat a finding of fraudulent joinder. The overwhelming thrust of Plaintiffs' complaints is that no one, not even their physicians, were properly informed about Baycol's risks. In addition, Plaintiffs do not even attempt to establish what tests and monitoring were required once Baycol was prescribed, and thus, have failed to establish any standard of care which their physicians allegedly

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                        Page 4
Not Reported in F.Supp.2d, 2003 WL 23305516 (D.Minn.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 23305516)**

breached. Accordingly, Plaintiffs' motions are denied.

**IT IS HEREBY ORDERED:**

**\*5** (1) Plaintiff Nannette Lowe's Motion for Remand to the Circuit Court of Jefferson County, Mississippi [Doc. No. 7 in Civil Case No. 03-3150] is DENIED; and

(2) Plaintiff Ora Lee Washington's Motion for Remand to the Circuit Court of Jefferson County, Mississippi [Doc. No. 6 in Civil Case No. 03-3151] is DENIED.

Date: _____

_____, MICHAEL J. DAVIS, United States District Court

11 NO. 1 Andrews Class Action Litig. Rep. 17 11 NO. 1 Andrews Class Action Litig. Rep. 17 11 NO. 1 Andrews Class Action Litig. Rep. 17 11 NO. 1 Andrews Class Action Litig. Rep. 17
D.Minn. 2003.
In re: BAYCOL PRODUCTS LITIGATION. Nanette LOWE, v. BAYER et al. ORA LEE WASHINGTON, v. BAYER et al.
Not Reported in F.Supp.2d, 2003 WL 23305516 (D.Minn.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT F



▶   In re Baycol Products Litigation
D.Minn.,2003.
Only the Westlaw citation is currently available.
United States District Court,D. Minnesota.
In re: BAYCOL PRODUCTS LITIGATION
**No. MDL 1431(MJD), 02-4835.**

May 27, 2003.

Akim A. Anastopoulo and Samuel K. Allen,
Anastopoulo Law Firm for and on behalf of
Plaintiffs.
Celeste T. Jones and Andrew G. Melling, McNair
Law Firm, N.A. and Gene S. Schaerr, Sidley Austin
Brown & Wood LLP for and on behalf of Bayer
Corporation.
DAVIS, J.
**\*1** This Document also relates to: Genevieve Spier v.
Bayer Corporation et al.,

This matter is before the Court upon Plaintiff's
motion for remand. Bayer Corporation ("Bayer")
opposes the motions, arguing that this Court has
diversity jurisdiction over Plaintiff's claims.

*Background*

Plaintiff Genevieve Spier is a citizen of the state of
South Carolina. She was prescribed Baycol by
Defendant Dr. Terrell Stone in February 1999; which
she took until August 2001. Complaint ¶ 6. She
alleges that she was injured as a result of ingesting
Baycol.

Plaintiff has asserted claims against the
pharmaceutical manufacturers, as well as her
personal physician, Dr. Stone. Because Dr. Stone is
also a citizen of the state of South Carolina, this
action was originally filed in state court. Bayer
Corporation timely removed this action to the United
States District Court, District of South Carolina
asserting subject matter jurisdiction based on
diversity of citizenship under 28 U.S.C. § 1332(a). In
its removal petition, Bayer asserts that the only non-

diverse defendant, Dr. Stone, was fraudulently joined
as Plaintiff failed to state a cause of action against
him.

*Standard*

Remand to state court is proper if the district court
lacks subject matter jurisdiction over the asserted
claims. 28 U.S.C. § 1447(c). In reviewing a motion to
remand, the court must resolve all doubts in favor of
remand to state court, and the party opposing remand
has the burden of establishing federal jurisdiction by
a preponderance of the evidence. *In re Business
Men's Assurance Co. of America*, 992 F.2d 181, 183
(8th Cir.1983) (citing *Steel Valley Auth. v. Union
Switch & Signal Div.*, 809 F.2d 1006, 1010 (3rd
Cir.1987)cert. dismissed484 U.S. 1021 (1988)).

Joinder is fraudulent and removal is proper when
there exists no reasonable basis in fact and law
supporting a claim against the resident defendant."
*Wiles v. Capitol Indemnity Corporation*, 280 F.3d
868, 870 (8th Cir.2001). The burden is on the
removing party to show that there is no possibility
that the plaintiff will be able to state a cause of action
against the resident defendant or that there has been
outright fraud in the pleading of jurisdictional facts.
*Parnas v. General Motors Corporation*, 879 F.Supp.
91, 92 (E.D.Mo.1995). In deciding this issue, the
Court may consider the pleadings and supporting
affidavits. *Id.*

Plaintiff has asserted a number of claims against
Bayer Corporation and SmithKlineBeecham (the
"Baycol Defendants") based in strict liability,
negligence, misrepresentation and fraud, and breach
of warranty. In support of these claims. Plaintiff
alleges that Baycol was unaccompanied by proper
warnings, and that the Baycol Defendants failed to
perform adequate testing.*Id.* ¶ 20.Plaintiff further
alleges that after the Baycol Defendants knew or
should have known of Baycol's risks of serious
injury, they failed to provide adequate warnings to
Plaintiff and/or her physicians ..." *Id.* ¶ 22."Further,
Defendants failed to warn the Plaintiff, her
physicians, her insurance company or the public that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21223842 (D.Minn.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 21223842)

such product was not safe."*Id.* ¶ 25.In support of her misrepresentation/fraud claim, she alleges that the "Baycol Defendants, through advertising, labeling, and other communications, made misrepresentations to physicians and the public, including the Plaintiff and Plaintiff's insurance company ... about the safety and efficacy of Baycol ..."*Id.* ¶ 27."Physicians and their patients, including the Plaintiff and the insurance company, relied on these Defendants fraudulent misrepresentations, and the Plaintiff was harmed as a result."*Id.* ¶ 30.

**\*2** In her Complaint, she also asserts a claim of negligence against Dr. Stone. Specifically, she alleges that Dr. Stone "knew, or should have known, that Baycol was a dangerously defective drug which posed unacceptable risks of serious injury which were unknown and unknowable by Plaintiff."*Id.* ¶ 18.She also alleges that Dr. Stone negligently failed to warn Plaintiff of the risks associated with Baycol and that such negligence was the cause of her injuries. *Id.* ¶ 26.She further alleges that Dr. Stone could have used a safer statin, but instead prescribed Baycol. *Id.*

It is Bayer's position that given the allegations in Plaintiff's complaint, that the Baycol Defendants misrepresented the safety of Baycol, and failed to warn physicians of the serious risks associated with Baycol, Plaintiff has failed to show that Dr. Stone knew or should have known of the serious risks associated with Baycol.

Plaintiff responds that she anticipates that Bayer will assert the "learned intermediary doctrine" as a defense to Plaintiff's claims. Assuming such doctrine will apply in this case, liability will be assumed by her physician, making the physician an indispensable party. Bayer responds, however, that the learned intermediary doctrine has no bearing on whether a cause of action exists against a doctor for failure to warn of unknown risks. The Court agrees.

In determining whether a party has been fraudulently joined, the Court looks to Plaintiff's Complaint. Reading the Complaint as a whole, it is clear that the main thrust of this action is that the Baycol Defendants misrepresented Baycol's risks and failed to adequately warn of such risks. Plaintiff has not included any factual assertions in her Complaint to support the conclusory allegation that Dr. Stone

"knew or should have known" of Baycol's risks. Her conclusory allegations, however, will not defeat a finding of fraudulent joinder. *Seee.g.In re: Rezulin Products Liability Litigation,* 2003 WL 43356 at \*1 (S.D.N.Y. Jan. 6, 2003) (citing *Strickland v. Brown Morris Pharmacy Inc.,* 1996 WL 537736 at \*2 (E.D.La. Sept. 20, 1996); *In re: Rezulin Products Liability Litigation,* 133 F.Supp.2d 272, 295 (S.D.N.Y.2001).*Seealso,Silver v. H & R Block, Inc.,* 105 F.3d 394 (8th Cir.1997) (conclusory allegations not sufficient to withstand motion to dismiss). Based on the allegations contained in the Complaint, the Court finds that there is no reasonable basis in fact and law supporting a claim against Dr. Stone.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for remand is DENIED.

D.Minn.,2003.
In re Baycol Products Litigation
Not Reported in F.Supp.2d, 2003 WL 21223842 (D.Minn.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT G



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

FRANK OMOBUDE, INDIVIDUALLY AND
ON BEHALF OF THE WRONGFUL DEATH
BENEFICIARIES OF JOSEPHINE
OMOBUDE, DECEASED                                           PLAINTIFF

VS.                                    CIVIL ACTION NO. 3:03CV528LN

MERCK & CO., INC. AND
ROBERT M. EVANS, M.D.                                      DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of plaintiff
Frank Omobude, individually and on behalf of the wrongful death
beneficiaries of Josephine Omobude, to remand pursuant to 28
U.S.C. § 1447.  Defendant Merck & Co., Inc. has responded to the
motion and the court, having considered the memoranda of
authorities submitted by the parties, concludes that the motion is
not well taken and should be denied.

Plaintiff, a citizen of Mississippi, brought this suit in the
Circuit Court of Hinds County, Mississippi seeking to recover
damages for the alleged wrongful death of his mother, Josephine
Omobude, which he alleges resulted from her use of the
prescription drug Vioxx.  Plaintiff sued Merck, the non-resident
corporation that manufactured and distributed Vioxx, and also
named as a defendant Robert M. Evans, M.D., the local physician
who is alleged to have prescribed Vioxx to Josephine Omobude.
Merck timely removed the case on the basis of diversity

M003350751

jurisdiction under 28 U.S.C. § 1332,[1] contending, based on the allegations of plaintiff's complaint, that the requirement of an amount in controversy in excess of $75,000 is clearly satisfied,[2] and contending further that there is complete diversity of citizenship since Dr. Evans, though a Mississippi resident, has been fraudulently joined to defeat diversity.    See Heritage Bank v. Redcom Labs., Inc., 250 F.3d 319, 323 (5th Cir. 2001) (fraudulent joinder of non-diverse will not defeat diversity jurisdiction).

The premise of Merck's fraudulent joinder argument, as gleaned from its notice of removal and its response to plaintiff's motion to remand, is that plaintiff's complaint does not allege a sufficient factual basis for his putative claim against Dr. Evans. In particular, Merck notes that throughout his complaint, plaintiff repeatedly and consistently asserts that Merck encouraged the use of Vioxx in "improper customers;" that it "misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects;" that despite knowledge of the defective nature of its product and for the purpose of increasing its sales and profits at the expense of the

---

[1]    That statute provides, in pertinent part, as follows: (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different states.

[2]    The court notes that plaintiff has not disputed that the amount in controversy exceeds $75,000.

2

M003350752

general public's health and safety, Merck aggressively marketed Vioxx both directly to the consuming public and indirectly to physicians through drug sales representatives as effective and safe and with inadequate warnings and instructions; and that Merck failed to provide timely and adequate post-marketing warnings or instructions after the manufacturer knew of the risk of injury from Vioxx.  On the basis of these allegations, plaintiff alleges claims against Merck for strict liability, negligence, breach of express and implied warranties and fraudulent misrepresentation. Merck argues that in light of plaintiff's repeated allegations that Merck misrepresented the safety and efficacy of its product and consistently concealed the known risks and dangers not only from the consuming public but also from physicians, plaintiff's charge of medical negligence against Dr. Evans based on nothing more than a conclusory allegation, wholly unaccompanied by any factual support, that Dr. Evans "knew, or should have known, of the dangerous side effects of these medications," and that "his prescribing such medications in light of such knowledge presents a deviation from the standard of care," is manifestly insufficient to state a cognizable claim.

In similar cases, this court has held that conclusory and contradictory allegations of knowledge, which were belied by the factual allegations of the complaint, demonstrated that the resident defendants against whom such allegations of knowledge were made, had been fraudulently joined.  See Brown v. Bristol Myers Squibb Co., Civ. Action No. 4:02CV301LN, slip op. at 11-12

3

M003350753

(S.D. Miss. Dec. 2, 2002) (resident physician fraudulently joined where claim was asserted in conclusory terms and contradicted by allegations of the pharmaceutical manufacturer's concealment or misrepresentation of information); <u>Louis v. Wyeth-Ayerst Pharmaceuticals, Inc.</u>, Civ. Action No. 5:02CV102LN (S.D. Miss. Sept. 25, 2000) (same with respect to resident pharmacy defendant); <u>see also</u> <u>In re Rezulin Prods. Liab. Litig.</u>, No. 00 Civ. 2843, 2003 WL 31852826, at *2 (S.D.N.Y. Dec. 18, 2002) (physician defendant fraudulently joined based on conclusory allegations). In the court's opinion, the same conclusion is in order here.

In so concluding, the court is aware of plaintiff's argument that "[a] party may plead alternative and inconsistent facts or remedies against several parties without being barred." <u>Guy James Constr. Co. v. Trinity Indus., Inc.</u>, 644 525, 530 (5th Cir. 1981). While this may be true generally, the court's point here is that the plaintiff has not pled inconsistent facts, but rather has pled consistent facts that are inconsistent with the conclusion he pleads as to Dr. Evans. Every <u>factual</u> allegation this plaintiff has made is to the effect that Merck withheld and concealed and misrepresented the true facts regarding Vioxx; and yet, without alleging any factual basis for the charge, plaintiff concludes that Dr. Evans "knew or should have known" the truth about Vioxx that Merck had misrepresented and concealed.

The court does not suggest that a "knew or should have known" allegation" will necessarily always be conclusory and hence

4

M00335O754

insufficient to state a cognizable claim simply because it is not attended by a specific factual allegation as to the source of such knowledge. However, in cases like this, where a plaintiff has specifically alleged facts from which one would necessarily infer that the defendant in question would not have known information otherwise alleged to have been misrepresented or concealed from him, then in the court's opinion, in that limited circumstance, to sustain his pleading burden, the plaintiff would have to plead at least some facts tending to show why or how the defendant knew or should have known of the information that has been misrepresented to or concealed from him. Otherwise, the court would be in the untenable position of assuming that a factual basis exists for a conclusory allegation that is entirely inconsistent with every factual allegation in the complaint. No precedent of which this court is aware suggests that this would be proper.[3] The caselaw,

---

[3]    Plaintiff has cited a number of cases from this district in which claims against physician and pharmacy defendants have been found sufficient to state a claim, but in the court's opinion, these cases are readily distinguishable. Henderson v. GlaxoSmithKline, No. 5:01CV159BrS (S.D. Miss. March 21, 2000), involved a question of fraudulent misjoinder, which is not an issue here. In Hancock v. Bayer Corp., No. 3:03CV67WS (S.D. Miss. Apr. 18, 2003), plaintiff alleged that the physicians in question had committed numerous acts of negligence other than merely prescribing an allegedly defective drug, such as failing to timely recognize the plaintiffs' adverse drug reactions, failing to monitor the plaintiffs, and prescribing the drug in the wrong dosage and in a manner inconsistent with the product labeling and contraindicated usages. Womack v. Bayer Corp., No. 3:03CV157WS (S.D. Miss. Apr. 18, 2003), involved specific allegations of alleged negligence by the defendant doctor, including that the physicians should have known of the risks in light of warnings actually issued to physicians by Bayer. No such claims were pled here. Likewise in the several Bayer cases remanded by Judge Pickering and cited by plaintiff, including Easterling v. Bayer

5

M003350755

in fact, is to the contrary.  See Great Plains Trust Co. v. Morgan

Stanley Dean Witter & Co., 313 F.3d 305, 313 (5th Cir. 2002)

(stating that the court will not "accept as true conclusory

allegations or unwarranted deductions of fact"); Sago v. Wal-Mart

Stores, Inc., 2003 WL 22076954, at *2 (S.D. Miss. 2003) (holding

that "conclusory or generic allegations of wrongdoing on the part

of the non-diverse defendant are not sufficient to show that the

defendant was not fraudulently joined") (citing Badon v. RJR

Nabisco, Inc., 224 F.3d 382, 392-93 (5th Cir. 2000); cf.

Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th

Cir. 1996) ("When considering a motion to dismiss for failure to

state a claim, the district court must take the factual

allegations of the complaint as true and resolve any ambiguities

or doubts regarding the sufficiency of the claim in favor of the

plaintiff.  However, conclusory allegations or legal conclusions

masquerading as factual conclusions will not suffice to prevent a

motion to dismiss."); Ross v. Citifinancial, Inc., 2003 WL

22026346, at *3 (5th Cir. 2003) (noting court's recognition of

"the similarity between standards for Federal Rule of Civil

Procedure 12(b)(6) (failure to state claim) and fraudulent

_____

Corp., No. 2:03CV37PG (S.D. Miss. Apr. 24, 2003), Dearman v. Bayer
Corp., No. 2:03CV38PG (S.D. Miss. Apr. 24, 2003), Jones v. Bayer
Corp., No. 2:03CV53PG (S.D. Miss. Apr. 24, 2003), Keys v. Bayer
Corp., No. 2:03CV39PG (S.D. Miss. Apr. 24, 2003), and Sumrall v.
Bayer, No. 2:03CV52PG (S.D. Miss. Apr. 24, 2003), the court found
that the plaintiffs had made specific allegations of negligence
against the resident doctors "for failing to properly monitor and
test each of the Plaintiffs according to the defendant drug
companies' recommendations."  No such allegations were made in
plaintiff's complaint in the case at bar.  See infra note 4.

6

M003350756

joinder" but noting that the latter inquiry is broader); Cranston
v. Mariner Healthcare Mgmt. Co., 2003 WL 21517999, at *4 (N.D.
Miss. 2003)(stating that on motion to dismiss, "[t]he court will
not accept as true any conclusory allegations or unwarranted
deductions of fact").[4]

---

[4]    The court notes that the only claim plaintiff has
alleged against Dr. Evans in his complaint is medical negligence
based on the allegation that Dr. Evans "knew, or should have
known, of the dangerous side effects of these medications" and his
prescribing "said medications in light of such knowledge."  In his
motion to remand, however, plaintiff attempts to recharacterize
and add to his claim against Dr. Evans.  He argues, for example,
that his claim that Merck produced and distributed defective
products does not preclude his claim against Dr. Evans with regard
to his "negligence in prescribing Vioxx or his negligence in
monitoring plaintiff."  He argues further that
      [j]ust as Merck failed to adequately warn Plaintiff's
      Decedent's physician, Dr. Evans failed to conduct
      regular monitoring of Plaintiff's Decedent to ensure the
      discovery of potentially serious side effects. . .
      including, not limited to, failing to perform adequate
      tests before the initiation of Vioxx treatment, and
      failing to subsequently perform other tests after
      initiation of Vioxx therapy to monitor any change in the
      status of Plaintiff's decedent. . . .   Defendant Evans
      also failed to warn Plaintiff's Decedent of possible
      side effects. . . .
None of these allegations, or any hint of such allegations,
appears anywhere in the complaint which, as to Dr. Evans, alleges
only that he was negligent in prescribing Vioxx when he knew, or
should have known, of the dangers of the drug.  Plaintiff cannot
secure remand on the basis of allegations and claims that are not
set forth in his state court pleading.  See However, the
Cavallinis did not cite, nor have we found, any case in which such
evidence has been considered to determine whether a claim has been
stated against the nondiverse defendant under a legal theory not
alleged in the state court complaint.
Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 263
263 n.14 (5th Cir. 1995)(rejecting plaintiff's "assertion that
post-removal affidavits can be used to defeat removal by
presenting new causes of action").

7

M003350757

For the foregoing reasons, the court concludes that plaintiff's motion to remand is not well taken and should be denied.

Accordingly, it is ordered that plaintiff's motion to remand is denied.

SO ORDERED this 3rd day of October, 2003.

_____
UNITED STATES DISTRICT JUDGE

8

M003350758